**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **United States of America ex rel.** ) | |
| **BRANDON BROWN,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **vs.** ) | **Case No. 11 C 1281** |
| ) | |
| **MARC HODGE, Warden,** ) | |
| **Lawrence Correctional Center,** ) | |
| ) | |
| **Respondent.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

An Illinois judge convicted Brandon Brown on charges of possession of a stolen

motor vehicle (PSMV) and aggravated PSMV and sentenced him to prison terms

totaling fifteen years. Brown has petitioned this Court for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. Respondent contends that all of Brown's claims are

procedurally defaulted. For the reasons stated below, the Court agrees that Brown's

claims are procedurally defaulted and therefore denies his petition.

**Background**

**A.      State court proceedings**

**1.      Aggravated PSMV trial (Case No. 06 CR 18675)**

On May 17, 2006, Skyway Chevrolet employee Donna Lee called the Chicago

police to report the theft of a 2006 Cadillac Escalade. Officer Eric Rashan responded to

the call. After learning that the car was equipped with an OnStar navigation system,

Rashan located the vehicle about an hour later, at 8224 South Saginaw.  He knocked on the door of the house where the car was parked, but no one answered.  Rashan called Lee, who arrived with other Skyway employees to retrieve the Escalade.

Rashan testified that he returned to the South Saginaw house on August 3, 2006.  Brown answered the door.  Rashan arrested Brown after learning that he had an outstanding traffic warrant.  Later that day, Lee viewed a line-up and identified Brown as the man who had stolen the Escalade.  A grand jury then indicted Brown for aggravated PSMV.  Brown was released on bond.  Brown originally retained counsel, but after his bond was revoked and his bail bond money was returned to his ex-girlfriend, who had posted the bond, Brown had no other funds to pay an attorney, so the court appointed a public defender.

In February 2008, the court held a bench trial on Brown's aggravated PSMV charge.  At the trial, Lee testified that she saw a man she identified as Brown at the Skyway Chevrolet dealership lot, looking at the Escalade.  After a series of attempted ruses, Brown eventually tricked Lee into leaving him.  When Lee returned, Brown had left, her desk drawer was open, and the Escalade's keys were missing.  Lee looked outside and saw Brown running toward the Escalade.  He turned to look at her and then hopped into the car and drove away.  Lee immediately told the dealership manager to call the police, and Officer Rashan arrived at the dealership shortly afterward.  Lee gave Rashan a physical description of the man she had seen and informed him that the Escalade was equipped with an OnStar navigation system.  About an hour later, Rashan notified Lee that he had located the Escalade, and she went with other Skyway employees to 8224 South Saginaw to retrieve it.  Finally, Lee testified that on August 3,

2006, Rashan contacted her again to ask her to come to the police station to view a line-up.  Lee testified that she identified Brown as the man who had stolen the Escalade from Skyway Chevrolet in May 2006.

On cross-examination, Lee admitted that although the man she identified as Brown had given her his name when she first approached him in May 2006, she could not remember the name later that day when Officer Rashan arrived at the dealership.  Lee also gave testimony about the clothing Brown had been wearing that conflicted with the description she had given to Rashan in 2006.  Lee accounted for this by stating that she sees "thousands of customers a day.  That part is kind of foggy." Ex. Z at Y-38.

Officer Rashan testified that on August 3, 2006, he was patrolling the South Saginaw area when he saw a suspicious-looking car parked in the same location where the Escalade had been located three months earlier.  When he knocked on the door to the house where the car was parked, Brown answered.  Rashan asked his sergeant to run Brown's name through a police database, which showed that Brown had an outstanding traffic warrant.  Rashan arrested Brown on the warrant and brought him to the police station.  Rashan testified that because Brown substantially matched the description of the car thief that Lee had given him in May, he contacted Lee to have her view a line-up that included Brown.  After Lee identified Brown, Rashan asked him about Skyway Chevrolet.  Brown admitted that he had been there and had spoken to a female salesperson, although he denied stealing the car.

On cross-examination, Rashan admitted that the car and car keys were never dusted for fingerprints.  He also admitted that Brown never signed a statement and that he (Rashan) had not reported Brown's oral statement to the state's attorney.

The court found Brown guilty of aggravated PSMV, determining that Lee was a credible witness even though there were some inconsistencies between the description of Brown's clothing she gave to Officer Rashan in May 2006 and her testimony in court. Specifically, the court noted that Lee's identification was credible and was corroborated by the fact that Brown answered the door to the house where the car had been found three months earlier. The court stayed sentencing pending the resolution of Brown's second case.

### 2. PSMV trial (No. 07 CR 13320)

On June 2, 2007, Brown was arrested while out on bond in his 2006 case. Officer John Sullivan testified that he arrested Brown after he tried to flee from a 2004 Ford Mustang that had been reported stolen nearly seven months earlier. Brown was charged with PSMV and other offenses relating to a license plate found on the Mustang. As indicated above, the trial court appointed the a public defender to represent Brown.

At Brown's bench trial in May 2008, Sullivan testified that he and his partner, Officer Brian Glim, were responding to a call about a noise disturbance when they saw a red Mustang convertible driving toward them. After learning that the car had been reported stolen, Sullivan stopped the Mustang and ordered the driver out of the car. He identified the driver as Brown. Sullivan testified that Brown ran away from the officers and that when they gave chase, Brown "stiffened up in an aggressive manner." Ex. Z at BB-20. Sullivan stated that the officers sprayed Brown with Mace and arrested him. After giving Brown *Miranda* warnings, Sullivan asked him "something along the lines of why are you driving a stolen car." *Id.* at BB-22. According to Sullivan, Brown responded: "I knew it was stolen. I didn't steal it. My boy took it. I was just using it."

*Id.* On cross-examination, Sullivan admitted that Brown did not sign any statement admitting that he knew the Mustang was stolen.

The court found Brown guilty of PSMV and granted defense counsel's motion for a directed finding of not guilty on the other charges. On June 17, 2008, the court sentenced Brown to consecutive prison terms of eight years on the aggravated PSMV conviction (No. 06 CR 18675) and seven years on the PSMV conviction (No. 07 CR 13320).

### 3.    Appeal and post-conviction proceedings

Brown appealed his convictions to the Illinois Appellate Court, which consolidated the two cases into a single appeal. *People v. Brown*, No. 1-08-1883 & 1-08-2095 (cons.) (Ill. App. Ct. July 1, 2010) (unpublished). On appeal, Brown asserted three claims: (1) the prosecution failed to prove him guilty of aggravated PSMV beyond a reasonable doubt (No. 06 CR 18675); (2) his term of mandatory supervised release was incorrectly calculated based on an improper classification of his convictions; and (3) he was not given the proper amount of credit for the time he had been incarcerated prior to his two convictions. On July 1, 2010, the appellate court affirmed the trial court's rulings on the first two issues and agreed with Brown on the third issue, giving him additional credit for time served. Brown then filed a petition for leave to appeal (PLA) with the Illinois Supreme Court, raising only the mandatory supervised release issue. The court denied the PLA. *People v. Brown*, No. 110846, 238 Ill. 2d 656, 942 N.E.2d 456 (Table) (Nov. 24, 2010).

While his direct appeal was pending, Brown filed a *pro se* petition for post-conviction relief, alleging that his public defender at trial had been constitutionally

ineffective in four respects: (1) failing to ask the "right questions," (2) failing to visit Brown in jail to discuss his case, (3) failing to investigate and call a witness for Brown that came to court on his behalf, and (4) failing to take action when he learned that Brown had been threatened. Brown also said he was innocent, stating that "these [*sic*] guys who committed this crime threaten[ed] to kill me if I told anybody." Ex. AA at 32–33. Brown's petition contained only the number of his second case (No. 07 CR 13320), but the petition discussed events that had occurred in the first case (No. 06 CR 18675). Brown also listed his sentence as fifteen years, the total sentence for both convictions. Ex. AA at 31.

The trial court summarily dismissed Brown's post-conviction petition on June 26, 2009, six days before the appellate court affirmed Brown's convictions on direct appeal. The trial court found Brown's post-conviction petition to be "frivolous and patently without merit." *Id.* at 28. The court addressed Brown's claim that trial counsel was constitutionally ineffective for failing to investigate or call a witness on his behalf, based on Brown's failure to include an affidavit from the potential witness or "explain the significance of the witness'[s] testimony." *Id.* The court did not expressly address Brown's claim that counsel was ineffective for failing to visit him at the jail to discuss his case or take action after learning that Brown had been threatened. The court discussed only the procedural posture of Brown's second trial, and its analysis of Brown's claim makes no mention of Brown's aggravated PSMV conviction.

Brown appealed to the Illinois Appellate Court. The Office of the State Appellate Defender was appointed to represent him. In March 2010, appointed counsel sought leave to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Ex. J, K.

Counsel stated that Brown had not set out a colorable claim of ineffective assistance. Ex. J at 9.  Appointed counsel's brief discussed the history of both cases and noted that the two cases had been consolidated on direct appeal.  In discussing the merits of Brown's post-conviction petition, counsel made no mention that the petition had included only the case number from his second trial.

On May 9, 2010, Brown responded to counsel's *Finley* motion, giving a number of details about both of his trials that he believed warranted relief in his post-conviction appeal.  Ex. L.  Brown reiterated the claim in his post-conviction petition that trial counsel was ineffective for failing to contact or call a specific witness on his behalf, basing these allegations on events that occurred in his first trial.  Brown also asserted a number of claims that he had not included in his post-conviction petition:  (1) trial counsel was unconstitutionally ineffective for failing to move to suppress Brown's statement in his first trial; (2) appellate counsel was unconstitutionally ineffective for failing to argue ineffective assistance of trial counsel on direct appeal; (3) the prosecution presented false testimony at both of his trials; (4) the prosecution failed to prove him guilty beyond a reasonable doubt; and (5) there were several irregularities surrounding his arrest and Lee's lineup identification in connection with his first trial.  Ex. I at 3.

On June 9, 2011, the appellate court granted appointed counsel leave to withdraw and affirmed the dismissal of Brown's post-conviction petition.  Ex. I.  The court referenced the claims included in Brown's response to the *Finley* motion, stating:

> In his response, defendant contends that his trial counsel failed to
> investigate a witness and file a motion to suppress.  Defendant also
> contends that appellate counsel refused to raise a claim of ineffective
> assistance on direct appeal.  He further argues that the State presented

false testimony at trial, he was not proven guilty beyond a reasonable doubt, and there were numerous irregularities surrounding his arrest and the subsequent lineup identification.

*Id.* at 3.  The court did not refer directly to the fact that many of these claims appeared for the first time in Brown's response, nor did it discuss the fact that some of the claims concerned Brown's first trial and others concerned the second one.  The court concluded as follows:

We have carefully reviewed the record in this case, the aforesaid memorandum, and defendant's response, and find no issues of arguable merit.  Therefore, the motion of the State Appellate Defender for leave to withdraw as counsel is granted, and the judgment of the circuit court of Cook County is affirmed.

*Id.*  The court's order referenced the numbers of both of Brown's cases as well as the number for the consolidated appeal.

Brown twice petitioned the appellate court for rehearing.  In his first petition, Brown reiterated many of his previously-mentioned claims but also included new claims: he asserted that his trial and appellate counsel were unconstitutionally ineffective for failing to provide him with discovery materials and that trial counsel was unconstitutionally ineffective for failing to obtain a recording of the noise disturbance complaint that preceded Brown's 2007 arrest.  Finally, Brown claimed without explanation that his Fourth Amendment rights had been violated.  Ex. M.

In his second petition for rehearing, Brown again repeated many of his claims. He also included allegations that the arresting officers in both of his cases illegally searched and seized him in violation of his Fourth Amendment rights and that trial counsel was ineffective in his first trial for failing to secure video surveillance footage from Skyway Chevrolet.  Ex. P.  The court denied both of Brown's petitions for

rehearing.  Ex. N, Q.

Brown attempted to file a PLA with the Illinois Supreme Court for his post-conviction petition.  The record includes a September 29, 2011 letter from the court clerk's office to Brown, explaining that it was returning his PLA unfiled because "the print on the 10th page of your document (page flagged) becomes illegible at the bottom of the page."  Ex. R.  The letter set a deadline of November 18, 2011 to resubmit his PLA.

Brown attempted to refile the PLA, but on December 28, 2011, the clerk's office again returned his attempted filing, this time because it was disorderly, was missing two appellate court decisions, and was untimely.  Ex. S.  The clerk's letter indicated that he would need to resubmit a compliant petition along with a motion for leave to file a late PLA.  In January 2012, Brown filed a motion requesting an extension to file a PLA and a motion for leave to file a late petition.  The clerk again wrote to Brown, advising him that the court was rejecting his motion for an extension and returning his motion for leave to file a late petition because it was not accompanied by the PLA petition itself.  Ex. T. When Brown subsequently attempted to file a PLA a third time, the court again returned the filing, explaining that "the time has lapsed . . . to file a timely petition to this Court." Ex. U.  The record submitted by respondent does not contain any of these attempted filings, presumably because the court had returned them to Brown without making copies.

**B.      Brown's habeas corpus petition**

On February 23, 2011, while the state courts' review was ongoing, Brown filed a *pro se* habeas corpus petition in this Court.  The Court stayed the petition pending

resolution of Brown's state court proceedings. After those proceedings concluded, the Court lifted the stay, and Brown filed an amended petition.

In his amended petition, Brown asserts six claims. First, Brown alleges that his Fourth Amendment rights were violated because the arresting officer in both of his cases searched and arrested him without probable cause. Second, Brown contends that he was denied due process because those same arresting officers gave false testimony at his trials. Third, Brown argues that his due process rights were also violated because his attorneys failed to give him access to the discovery materials he requested. Fourth, Brown contends that the prosecution failed to prove him guilty beyond a reasonable doubt in either of his trials. Fifth, Brown contends that his trial counsel rendered ineffective assistance by failing to: (1) investigate or call two specific witnesses; (2) obtain video surveillance footage from Skyway Chevrolet in the first case; (3) investigate alleged conflicts in the prosecution's evidence presented at his second trial; (4) provide Brown with discovery materials in both cases; and (5) file a motion to suppress his post-arrest statement in his aggravated PSMV case. Brown also contends that his appellate counsel was unconstitutionally ineffective for failing to: (1) investigate or contact the exculpatory witnesses in both cases; (2) investigate Brown's claims that the arresting officers gave perjured testimony in both trials; (3) provide Brown with discovery materials during his appeal; and (4) assert a claim of trial counsel's ineffectiveness on direct appeal.

## Standard of Review

Before a federal court may address the merits of a habeas corpus petition from a state prisoner, the petitioner must give each level of the state's courts a fair opportunity

to review his federal claims.  28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27,

32 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999).  If, in resolving a

petitioner's constitutional claim, a state court relies on a state procedural ground that is

independent of the federal question and adequate to support the judgment, the claim is

procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Moore v.

Bryant*, 295 F.3d 771, 774 (7th Cir. 2002).  If a claim has been procedural defaulted, a

federal court will not address the merits of the claim unless the petitioner can

demonstrate both cause for and prejudice from the default or that a miscarriage of

justice will occur if the Court fails to address the merits.  *See, e.g., Woods v. Schwartz*,

589 F.3d 368, 373 (7th Cir. 2009).

## Discussion

Respondent contends that Brown procedurally defaulted all of his claims by

failing to file a PLA challenging the dismissal of his post-conviction petition.  Brown does

not directly address the procedural default issue but merely asks the Court to look at his

case.  Respondent, in turn, offers no argument on the merits of any of Brown's claims.

The Court concludes that although Brown's failure to file a PLA does not amount to a

procedural default, Brown has nevertheless procedurally defaulted all of his federal

claims and can provide no excuse sufficient to permit the Court to reach the merits of

his claims.

A.      **Brown's rejected PLA petitions**

When dealing with a state procedural rule, the Court will defer to the state court's

decision "when that rule is applied in a consistent and principled way, but a rule that is

infrequently, unexpectedly, or freakishly applied is not an adequate state ground that

bars federal habeas review." *Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir. 2000). The adequacy of a state procedural bar is a question of federal law, not state law. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

Illinois Supreme Court Rule 315, which governs the filing of PLAs, is an established rule that is, no doubt, commonly applied. But although a violation of a firmly established and regularly followed state rule ordinarily forecloses review of a federal claim, there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Id.* at 376; *see also Smith v. Winters*, 337 F.3d 935, 937 (7th Cir. 2003) ("[W]hen the application [of a state rule] is so surprising, unanticipated, unprecedented, unforeseeable, and indeed freakish as not to be foreseeable by the petitioner, its existence will not block him from pressing his federal claims in his federal habeas corpus proceeding.").

Brown made three separate attempts to file a PLA challenging the denial of his post-conviction petition. Each time he was rebuffed by the Illinois Supreme Court, who "acknowledge[d] receipt" but nevertheless returned his petitions unfiled. Ex. R, S, U. The second and third petitions were returned because they were untimely, and there is no basis to question that particular application of Rule 315. The court rejected Brown's first petition, however, solely because the writing on the bottom of the tenth page of the petition was illegible. Ex. R. Rather than accepting the PLA and simply disregarding any argument it could not read on that part of that page, or instructing Brown to refile a readable copy of the page, the clerk of court returned Brown's entire PLA petition unfiled. Though there is indisputably a proper purpose for Rule 315's requirement that

a PLA set out the arguments the petitioner is making, it is difficult to see how Brown's error rendered his entire petition unsuitable. *See Lee*, 534 U.S. at 378 (looking to the purpose of the state procedural rule to determine whether the application of that rule in petitioner's case served a perceivable state interest).

The text of Rule 315 does not contain any requirement that every part of a PLA must be completely legible. And no published Illinois decision indicates that a PLA that is partially illegible is subject to rejection in its entirety. The only mention of legibility associated with Rule 315 is found in the 1984 Committee Comments to the rule, noting that PLAs do not need to be printed, but "may be reproduced in other clearly legible forms." Ill. Sup. Ct. R. 315, 1984 cmts. This suggests that the court clerk's refusal to file and wholesale return of Brown's PLA based on the illegibility of one portion of one page was a "surprising, unanticipated, unprecedented, unforeseeable, and indeed freakish" application of an otherwise well-established state procedural rule. *Smith*, 337 F.3d at 937. Like the petitioner in *Lee*, Brown "substantially, if imperfectly" complied with the state procedural rule. For this reason, the state court's decision is not an adequate state-law ground precluding the Court from addressing the merits of Brown's claims. *Lee*, 534 U.S. at 366, 377 (finding that "nothing would be gained by requiring" habeas petitioner to comply perfectly with state procedural rule). The Court therefore rejects respondent's argument that all of Brown's claims procedurally defaulted when the state court refused to accept and file his PLA.

The Court notes that the state court record does not contain the partially illegible petition. Thus, the Court cannot determine with certainty what claims Brown asserted in the PLA. For purposes of the discussion that follows in the remainder of this

decision, the Court will assume that Brown asserted in the PLA all of the claims he has included in his federal habeas corpus petition.

This does not end the Court's procedural default analysis, however. If the Illinois Appellate Court, the last court to render a judgment on Brown's claims, rejected claims due to Brown's failure to comply with relevant state procedural rules, "the state court's refusal to adjudicate the claim . . . qualifies as an independent and adequate state ground for denying federal review." *Cone v. Bell*, 556 U.S. 449, 465 (2009); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) (stating that when the last state court to render a judgment on petitioner's claims finds a procedural default based on state law, that claim cannot ordinarily be reviewed in federal court). The Court will make this assessment separately for each of Brown's claims.

**B.     Fourth Amendment claims**

Brown contends that that the arresting officers violated his Fourth Amendment rights when they arrested him in 2006 and 2007. Brown alleges that Officer Rashan did not in fact arrest him at 8224 South Saginaw but instead searched and detained him several houses down the street, where Brown was standing with two to three other individuals. Brown contends that the officer arrested him because he would not provide information about a certain gang member. He also alleges that on June 2, 2007, he was not driving a Ford Mustang as Officer Sullivan testified but instead was standing with his ex-girlfriend when the arresting officers approached him. The Mustang, he says, was parked nearby. As with his first arrest, Brown contends that the officers searched him only after he refused to give them information about a specific gang member. He states that during their search, the arresting officers recovered a photo of

him standing next to a red Mustang, which he contends was not the car parked nearby. Brown alleges that when the officers discovered the Mustang parked nearby was stolen and he would not tell them who had stolen it, they arrested him for PSMV.  He argues that the searches and seizures were conducted without probable cause and were thus unconstitutional.

Brown's Fourth Amendment claims are not cognizable in a federal habeas petition.  With respect to Brown's claims that his 2006 and 2007 arrests were illegal, it is well established "that illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 120 (1975).  In other words, "an illegal arrest . . . is an insufficient ground, standing alone, upon which to vacate a conviction in federal habeas proceedings."  *Sanders v. Israel*, 7171 F.2d 422, 423 (7th Cir. 1983); *see also Hawkins v. Montgomery*, No. 10 C 0384, 2011 WL 4431175, at *2 (N.D. Ill. Sept. 22, 2011).

Brown's claims that the police unlawfully searched him prior to his arrests similarly fail.  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976).  Illinois clearly provides an opportunity for criminal defendants like Brown to resolve Fourth Amendment claims, and in any event, a petitioner cannot claim a denial of the opportunity for full and fair litigation of his claim if he fails to raise and preserve the claim in state court (which Brown did not do).  *United States ex rel. Bostick v. Peters*, 3 F.3d 1023, 1027 (7th Cir. 1993); *see also United States ex rel. Redding v. Godinez*, 900 F. Supp. 945, 948–49 (N.D. Ill. 1995).  In short, Brown's Fourth Amendment claims are not

cognizable in this case.

## C. Due process claims

### 1. Counsel's failure to provide Brown with discovery materials

Brown claims that he was denied due process of law due to his trial and appellate counsels' failure to provide him with the discovery material that he requested. Brown raised this allegation for the first time in his first petition for rehearing before the Illinois Appellate Court. "[A]n appellant does not fully and fairly present a federal claim to the state courts when he raises that claim for the first time in a petition for rehearing before the state appellate court." *Lewis v. Sternes*, 390 F.3d 1019, 1031 (7th Cir. 2004). Brown provides no explanation for his failure to raise this issue in a proper fashion and does not attempt to show cause and prejudice with regard to the default. The Court rejects the claim based on Brown's unexcused procedural default.

### 2. False testimony

Brown claims that he was denied due process because Officers Rashan and Sullivan provided false testimony at his trials. The Court assumes for purposes of discussion that this allegation states a viable due process claim. *See United States v. Kaufman*, 783 F.2d 708, 709 n.5 (7th Cir. 1986); *Holleman v. United States*, 721 F.2d 1136, 1139 (7th Cir. 1983); *Smith v. Page*, No. 95 C 5129, 1998 WL 25197, at *1 (N.D. Ill. Jan. 7, 1998). Even if the claim is potentially viable on the merits, however, it has been procedurally defaulted. Brown did not include this claim in his post-conviction petition filed in the state trial court. Rather, he asserted the claim for the first time when he responded to his appointed appellate counsel's *Finley* motion seeking leave to withdraw. Under Illinois law, "[a]ny claim of substantial denial of constitutional rights not

raised in the original or an amended [post-conviction] petition is waived."  725 ILCS 5/122–3.

This state procedural bar is "not immortal," however; "[i]f the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available."  *Ylst*, 501 U.S. at 802.; *see also Cone*, 556 U.S. at 468 ("Although we have an independent duty to scrutinize the application of state rules that bar our review of federal claims, we have no concomitant duty to apply state procedural bars where state courts have themselves declined to do so.") (internal citations omitted).

The state appellate court rejected Brown's opposition to his appointed counsel's *Finley* motion but did not clearly explain why.  It stated that it had reviewed the record, the *Finley* motion, and Brown's response, and it said there were "no issues of arguable merit."  *See* Ex. I at 3.  But that does not mean that the appellate court rejected Brown's newly-asserted claims on their merits rather than on the rather obvious basis that he has not asserted them in his post-conviction petition (which was part of the appellate record).  When the basis for a state court's ruling it is unclear from the face of the ruling, a federal court considering a habeas corpus petition "look[s] to the nature of the disposition and the surrounding circumstances to determine whether the state court relied on an independent and adequate state law ground in disposing of the claim." *Woods*, 589 F.3d at 375.  The Court concludes that the appellate court's statement that it found no issues of arguable merit is not enough to construe the decision to be merits-based as to *both* the issues that Brown had presented in his post-conviction petition *and* the claims he identified for the first time in his *Finley* response.  The more reasonable

and thus the more likely basis was that the court concluded the newly-asserted claims lacked merit because Brown had forfeited them. *See Lewis v. Sternes*, 390 F.3d 1019, 1024, 1031 (7th Cir. 2004) ("[W]e reject the notion that a petitioner fairly presents his federal claim to the state courts when he raises that claim for the first time in an appellate brief after his lawyers has filed a motion to withdraw under *Finley*."). The Court concludes that the claim was procedurally defaulted.

## D.     Sufficiency of the evidence

Brown alleges that the State failed to prove him guilty beyond a reasonable doubt in either of his two trials. With respect to Brown's second trial, Brown raised this claim for the first time in his first petition for rehearing. As indicated above, "[a]n appellant does not fully and fairly present a federal claim to the state courts when he raises that claim for the first time in a petition for rehearing before the state appellate court." *Id.* at 1031. Brown has procedurally defaulted this claim.

Turning to Brown's first trial, he challenged the sufficiency of the evidence at trial and on appeal to the Appellate Court. But his PLA filed in the Illinois Supreme Court omitted this claim. This claim is thus procedurally defaulted as well.

## E.     Ineffective assistance of appellate counsel

Brown alleges ineffective assistance of appellate counsel on four grounds:  (1) appellate counsel failed to investigate or contact exculpatory witnesses that Brown identified in each of his cases; (2) appellate counsel failed to investigate Brown's claims that the arresting officers in both of his criminal trials gave perjured testimony; (3) appellate counsel failed to provide Brown with the discovery materials that he requested; and (4) appellate counsel failed to raise a Sixth Amendment claim that trial

counsel was unconstitutionally ineffective.

Brown's direct appeal was not decided until July 1, 2010, six days *after* his post-conviction petition was denied.  Ex. H.  Brown claims that he filed his post-conviction petition when he did at the direction of his appellate defender.  Ex. M.  The petition did not include any claim of ineffective assistance by appellate counsel.  Brown presented his claim that appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness for the first time in his May 9, 2011 response to the *Finley* motion filed by his appellate counsel in his post-conviction case.  He alleged ineffective assistance of appellate counsel on the remaining grounds for the first time in his first petition for rehearing, which he filed on June 24, 2011.

Brown procedurally defaulted parts one, two, and three of his ineffective assistance claim (as identified above) because he did not assert them in state court at any point before his petition for rehearing on appeal.  *See Lewis*, 390 F.3d at 1031.  Brown likewise procedurally defaulted the fourth part of his ineffective assistance claim, concerning appellate counsel's failure to argue trial counsel's ineffectiveness.  Specifically, he failed to raise the claim at all levels in the state court system in connection with his post-conviction petition.  *See Johnson v. Loftus*, 518 F.3d 453, 455 (7th Cir. 2008).  Even if the Court assumes that Brown included the claim in his attempted PLA, he did not present the claim at the trial court level in his post-conviction petition.

Brown does not attempt to show cause and prejudice with regard to these defaults.  Rather, he merely contends that his lawyers have been "railroading" him.  This is insufficient to excuse the default.

**F.     Ineffective assistance of trial counsel**

Brown's final claim is that trial counsel was ineffective for failing to:  (1) obtain video surveillance footage from the car dealership where the Cadillac Escalade was stolen; (2) provide him with discovery materials in both of his cases; (3) file a motion to suppress his oral statement in his first trial; (4) investigate allegedly conflicting evidence that the prosecution presented in his second trial; and (5) investigate, interview, or call to the stand two exculpatory witnesses to testify on his behalf.  The Court finds that Brown has procedurally defaulted all of these contentions.

**1.     Grounds 1–4**

The first time that Brown alleged that his trial counsel was ineffective on grounds one and two was in his petitions to the Illinois Appellate Court seeking rehearing.  As indicated above, constitutional claims that are initially presented to the state courts in this manner are considered to have been procedurally defaulted.  *Lewis*, 390 F.3d at 1031.  Brown has not presented any argument for cause and prejudice to excuse the default.

Brown initially alleged that counsel in his first trial was ineffective for failing to file a motion to suppress when he filed his response opposing appellate counsel's *Finley* motion seeking leave to withdraw.  Brown procedurally defaulted this claim as well, as discussed in connection with his due process claim based on the arresting officers' allegedly false testimony.

Finally, Brown contends that trial counsel was ineffective when he failed to take a photograph of the Mustang that he was convicted of possessing and compare it with the photographs of a Mustang that the prosecution introduced into evidence.  Brown never

presented this argument to any state court.  He procedurally defaulted this claim as well.

### 2. Failure to investigate, interview, or call exculpatory witnesses

Brown's final claim is that his trial counsel rendered unconstitutionally ineffective assistance by failing to investigate two exculpatory witnesses and to call them to testify on Brown's behalf.  Brown first presented this claim to the trial court in his post-conviction petition filed on June 3, 2009.  The trial court dismissed Brown's claim, noting that he did not include an affidavit from any potential witness or "explain the significance of this witness'[s] testimony."  Ex. AA at 28.

The Illinois Post Conviction Hearing Act provides that a post-conviction petition "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2.  The purpose of section 122-2 is to show that a defendant's post-conviction allegations "are capable of objective or independent corroboration." *People v. Collins*, 202 Ill. 2d 59, 67, 782 N.E.2d 195, 199 (2002).

When a post-conviction petitioner asserts, as Brown did, ineffective assistance based on trial counsel's failure to call or contact certain witnesses, Illinois courts have routinely held that a petitioner must "attach to his petition affidavits showing the potential testimony of such witnesses and explain the significance of their testimony."  *People v. Dean*, 226 Ill. App. 3d 465, 468, 589 N.E.2d 888, 890 (1992); *People v. Barr*, 200 Ill. App. 3d 1077, 1079, 558 N.E.2d 778, 780 (1990.  In this case, the state trial court ruled that Brown satisfied neither requirement.  And though section 122-2 permits a petitioner to offer other types of evidence to support a petition or an explanation of why he is

unable to do so, Brown did not meet this alternative requirement either.  *See* Ex. AA at 31-41 (Brown's trial court post-conviction filings).

A petitioner's failure to meet the requirements in 725 ILCS 5/122-2 amounts to a procedural default of the petitioner's federal claim.  *See, e.g., United States ex rel. Smith v. Evans*, No. 00 C 4482, 2009 WL 196301, at *11 (N.D. Ill. Jan. 26, 2009); *United States ex rel. Edwards v. Sternes*, No. 04 C 1610, 2005 WL 3447773, at *3 (N.D. Ill. Dec. 13, 2005); *see also United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 242 (7th Cir. 2003) (characterizing petitioner's failure to provide an affidavit as required by the Post-Conviction Hearing Act as procedural default).  Thus Brown's last ineffective assistance claim is procedurally defaulted.

**G.    Excusing Brown's procedurally defaulted claims**

As indicated earlier, Brown has not offered a cause-and-prejudice argument as a basis to excuse his procedural defaults.  He does, however, repeatedly contend in his filings that he is innocent.  The Court will consider this as an argument that his procedural defaults should be excused on the ground that failure to consider them would result in a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 750.

To excuse his procedural defaults under the miscarriage-of-justice exception, Brown "must show that 'in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt.'"  *Coleman v. Hardy*, 628 F.3d 314, 319 (7th Cir. 2010) (quoting *House v. Bell*, 547 U.S. 518, 537 (2006)).  The Court "consider[s] all of the evidence, old and new, and based on this total record, make[s] a probabilistic determination about what reasonable, properly instructed jurors would do."  *Coleman*, 628 F.3d at 319 (internal quotation marks omitted).

Brown has not given the Court any new evidence to support his innocence claim. He contends that he has two exculpatory witnesses, but he has not submitted anything showing that they have knowledge that contradicts the evidence offered at his trials. Brown contends that his lack of evidence is due to his inability to locate the witnesses. This contention is insufficient to excuse him from the requirement of showing that with his new evidence, it is more likely than not that no reasonable juror would have found him guilty.

Brown claims that these witnesses would provide testimony that the arresting officers in both of his cases lied about where they arrested him. Taking this as true for present purposes, the witnesses' claimed testimony would concern only the place of Brown's arrest, not his subsequent interaction with the arresting officers. A reasonable jury would not necessarily have to draw from erroneous testimony by the arresting officers about the location of the arrests the conclusion that Brown made statements in which he impliedly admitted to possessing the stolen vehicles. This aside, a reasonable jury could have found evidence sufficient to convict Brown based on Donna Lee's lineup identification in Brown's aggravated PSMV case and the photographs depicting him standing next to a Ford Mustang in his PSMV case. Given these circumstances, Brown's claimed exculpatory evidence is insufficient to demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 321 (1995).

## H.    Certificate of appealability

When a district court enters a final judgment that dismisses a prisoner's habeas corpus petition, it must issue or deny a certificate of appealability (COA). Unless a court

issues a COA, "federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To obtain a COA, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A court should issue a COA if it determines that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

The Court's determination that each of Brown's claims is procedurally defaulted and that these defaults are not excused is not fairly debatable. The Court therefore declines to issue a certificate of appealability.

## Conclusion

For the reasons stated above, the Court denies Brown's petition for writ of habeas corpus [docket no. 18] and declines to issue a certificate of appealability. The Clerk is directed to enter judgment in favor of the respondent.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 22, 2012